**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Theodore Jay GANO,**
**Defendant-Appellant.**

**No. 76–1276.**

United States Court of Appeals,

Tenth Circuit.

Argued July 18, 1977.

Decided Aug. 11, 1977.

Bruce E. Miller, Asst. U. S. Atty., Topeka, Kan. (E. Edward Johnson, U. S. Atty., Topeka, Kan., on the brief), for plaintiff-appellee.

John O. Martin, Asst. Federal Public Defender, Kansas City, Kan. (Leonard D. Munker, Federal Public Defender, Kansas City, Kan., on the brief), for defendant-appellant.

Before McWILLIAMS and DOYLE, Circuit Judges, and MARKEY,* Chief Judge.

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from a conviction on three counts of the crime of having carnal knowledge of a female under the age of 16, contrary to 18 U.S.C. § 2032. The questions which are advanced in this effort to obtain a reversal are whether the trial court erred in receiving testimony as to other offenses allegedly committed by the defendant, and whether the government satisfied its burden of proving that the defendant had the necessary mental capacity to commit the offense charged in the indictment.

The defendant was employed as a social worker at the Veterans Administration Hospital in Topeka, Kansas. His assignment was to counsel members of the families of patients. The patient in this instance was a dentist, who was being treated for psychiatric problems. He had three children, the oldest of whom was 15, the youngest four. The 15-year-old, Cynthia, became acquainted with defendant incident to the defendant counselling her mother and other members of the family.

In September 1974, defendant commenced counselling the mother and sex became the main area of discussion. Soon after this, the family moved to Topeka where the hospital was and the mother began to see defendant two to three times a week. At these sessions sex was the main area which was discussed. This ultimately led to intercourse between the mother and the defendant. Prior to this incident, there was an extensive program of establishing trust, engaging in body massage, plus other actions designed to break down barriers and inhibitions by means of psuedo-treatment methods.

During the several month period in which all of the alleged actions occurred, the 15-year-old daughter, who had been attending school in Missouri, moved to Topeka and immediately defendant's focus was shifted to her. About the same program was fol-

---

* Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

lowed in his dealings with this young girl. Counselling sessions were had with the 15-year-old about three times a week and sexual topics together with massage were the principal activities. As in dealing with the mother, he sought to develop a trusting and uninhibited relationship with her. Finally, on December 17, 1974, he induced her to have sexual relations with him in his Veterans Administration Hospital office. After this he urged her not to tell anyone what had happened because, so he maintained, this would destroy their relationship. However, she refused to return for sessions with him after the December 17 occurrence and eventually did so only as a result of her mother's urging. The mother was also persuaded to surreptitiously give the daughter marijuana in food. This was represented as an attempt to relax the child and to thereby assist the therapy. About this time the child ceased her communication with her mother, and on January 10, 1975, defendant took the girl to a movie after she had had marijuana in her food and then afterwards took her to his office at the Veterans Administration Hospital, where they again had intercourse. Intercourse again occurred at the office on January 15, 1975.

He saw the child frequently thereafter, and in mid-February, there was a weekend trip to Wichita on the pretext that it would be therapeutic. On February 13, 1975, he and the girl traveled to Kansas City, Missouri. There were frequent acts of intercourse during this period of time.

As indicated above, the sole question for our determination is whether it was error to admit testimony pertaining to crimes other than that charged in the indictment. Also received was testimony that defendant had sold marijuana to the mother for her own use and for the purpose of giving it to the child; that this was as a prelude to one of the charged offenses. Further received was evidence that he gave marijuana to the girl. All of this was objected to, and the trial court overruled the objections at the same time cautioning the jury that this evidence was admissible for a limited purpose, that of showing opportunity, preparation, plan, knowledge or absence of mistake or accident in connection with the charged offenses. Following the close of the trial, the judge gave an additional instruction which again limited the evidence received.

The argument of defendant is that the testimony as to other acts, including one act of intercourse with the mother, is not probative and that it does not establish opportunity, preparation, plan, knowledge or absence of mistake or accident. He says also that the error is compounded because of the fact that no issue existed as to the commission of the acts. The government maintains that the evidence was admissible because it was relevant to the defense of insanity and because it concerned matters so closely connected to the charged offenses that it is indivisible from the acts which are set forth in the indictment. An alternative position of the government is that the evidence shows a scheme, plan, knowledge, opportunity, etc.

■ We are of the opinion that the court did not err in receiving this testimony. The part of the evidence which is at first somewhat questionable is that pertaining to the act of sexual intercourse with the mother.[1]

1. On the question whether evidence of relationship with another person is admissible, it is considered in II Wigmore, 3d Ed., § 398, p. 355. The author states that such evidence of prior sexual acts has been received for the purpose of showing the defendant's propensity for that kind of act. Other cases hold that such acts are remote, irrelevant and inadmissible.

As to the offense of statutory rape, the cases collected by Wigmore show that the admissibility of such evidence depends upon the circumstances of each individual case. Thus, prior sexual acts with the prosecutrix are generally admissible in a statutory rape prosecution. See II Wigmore on Evidence, § 398 n.1, pp. 361–65 and 1975 Supp., pp. 164–66. Generally, such acts with persons other than the named prosecutrix are inadmissible, but there is an exception to this last rule in cases in the Wigmore note where the sexual acts with other children occurred at the same place and on the same day as the charged offense. See State v. Dowell, 47 Idaho 457, 276 P. 39 (1929); State v. Sheets, 127 Iowa 73, 102 N.W. 415 (1905). Close similarity of the charged offense and the previous act enhances the probative value of the evidence so as to overrule the prejudicial effect.

This was separated in time from the acts which were perpetrated against the daughter. Also, where the act is against another victim and is separated in time from that which took place with the person described in the indictment, it is at least suspect. However, in this case we see no basis for distinguishing the one act involving the mother from the subsequent ones involving the daughter. In both instances the method employed by defendant was essentially the same. It was under the guise of therapy or treatment. Defendant manipulated both the mother and the daughter and played them one against the other even using marijuana to aid him in carrying out his scheme. Not only do we consider the evidence relevant and material, it appears to us that it would be difficult to divide up the numerous incidents since they were closely interrelated so as to be indispensable to a complete showing.

Rule 404(b) of the Federal Rules of Evidence deals with the present subject. This rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Thus, the first part of the rule states that evidence of other crimes is inadmissible to prove the character of a person. It in effect provides that it is not permissible to offer other offenses in order to establish that the accused is a person of bad character. This is not different from the general rule which existed prior to the adoption of the rule. Its similarity to the prior law is found in its recognition of the admissibility of other acts which show motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake. In the case at bar the evidence helped to establish the offenses charged by proving motive, preparation, plan and knowledge (or state of mind).

■ It is no answer that the commission of the act was not disputed in that the defendant relied on insanity. The government is not on that account excused from proving the elements of its case. If the evidence is relevant, it is admissible even though the defendant promises to finally admit the acts charged.

Moreover, the close relationship of the acts, one with the other, justified their admission.

■ As to furnishing the marijuana: this was admissible although it tended to show the commission of a somewhat different crime because it was sold to the mother for her own use and as part of the therapy being administered to the daughter. Accordingly, the marijuana was used to lower the resistance of the daughter to defendant's advances, so it cannot be argued that this did not have a bearing on the method employed by defendant to have intercourse with the daughter.

■ We reject the further argument of defendant that this evidence should have been excluded under Rule 403, which gives the court a discretion to exclude evidence where the prejudice is great and the probative value is less significant than the resulting prejudice and is outweighed by it.

As we have shown above, the sale and the use of marijuana plus the pseudo-treatment efforts were part of the same scheme and looked to the same objective. Also, the fact

In the instant case, where the daughter is the victim and the mother is the object of another act, the connection is so close as to render the evidence admissible. After all, access was gained to the daughter through the mother. The scheme of false therapy was used to seduce the mother and was repeated with some modifications to overcome the resistance of the daughter. The time period was not so great of itself to cause the evidence to be inadmissible because the defendant was using this time to execute his plan against the daughter.

*Cf. Lovely v. U. S.,* 169 F.2d 386 (4th Cir. 1949) (testimony that defendant charged with rape had, fifteen days before charged offense, raped a different woman on the same federal reservation and also in an automobile held to be inadmissible; distinguishable on the facts since there was no connection between the acts or the victims).

that these came in as part and parcel of the proof of the offenses charged in the indictment does not render it inadmissible. *See Chase v. Crisp,* 523 F.2d 595, 600 n.4 (10th Cir. 1975), *cert. denied,* 424 U.S. 947, 96 S.Ct. 1418, 47 L.Ed.2d 354 (1976); *U. S. v. Roe,* 495 F.2d 600, 604 (10th Cir.), *cert. denied,* 419 U.S. 858, 95 S.Ct. 107, 42 L.Ed.2d 92 (1974).

In our view then, the trial court did not err in ruling that the evidence was admissible either as proving the offenses charged or as showing the complete picture of the perpetration of a scheme to have relations with the daughter. The trial court did not abuse its discretion. *U. S. v. Nolan,* 551 F.2d 266, 271 (10th Cir. 1977).

■ As to the issue of the defendant's alleged insanity, we need only say that there was ample evidence in the record to establish the mental responsibility of the accused at the time of the offense.

The judgment is affirmed.