THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE GIBSON, Plaintiff in Error.

*Opinion filed October 26, 1912.*

1. CRIMINAL LAW—*general rule as to proving one offense in support of prosecution for another.* Except where two acts are so connected as to form but one transaction, a separate and distinct offense cannot be proved in support of a prosecution for another.

2. SAME—*time of offenses is not the true test in determining their connection.* In determining whether two offenses are so connected as to be part of one transaction, the fact that one follows the other very closely in point of time is not the true test.

3. SAME—*proof of rape upon another female than the prosecuting witness is inadmissible.* In a prosecution for rape with the consent of a female under fourteen years of age, evidence that the defendant, a few minutes after committing the offense with the prosecuting witness, committed a like offense with her companion, who was also under the age of consent, is not admissible, and if the fact of guilt is doubtful its admission is prejudicial error.

CARTER and HAND, JJ., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WILLIAM H. McSURELY, Judge, presiding.

J. K. McMAHON, for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN E. W. WAYMAN, State's Attorney, (FREDERIC BURNHAM, and ORIS BARTH, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error, George Gibson, was found guilty, in the criminal court of Cook county, of statutory rape upon Ida Cedergren, a girl twelve years of age at the time of the alleged crime, and sentenced to the penitentiary for seven years. This writ of error was thereupon sued out.

The father of plaintiff in error was the proprietor of a stone yard on the south side, in Chicago, and plaintiff in error was employed there, first as a foreman and afterwards as a draftsman. At the time of the alleged offense he was thirty-two years of age, a married man, with three children. Across from the stone yard is a public playground in charge of a superintendent, and adjacent to the playground is located one of the Chicago public schools, with its playground. About these places a number of young girls who lived in that vicinity, including the complaining witness, were in the habit of playing. Ida Cedergren testified that in the summer of 1909 plaintiff in error called her into the office of his stone yard about half-past five in the evening; that Nora Porter, a schoolmate, then eleven years old, was with her; that when they went into the office he barred the door and asked her (Ida) to sit on a table used for drafting purposes; that she took her drawers off, seated herself on the edge of the table and in that position plaintiff in error had intercourse with her. She further testified that after he had accomplished that act, and before she got off the table, he committed the crime against nature upon her, and then Nora Porter got on the table and plaintiff in error had intercourse with her, and that this all occurred in about ten or fifteen minutes. Nora Porter testified to the same acts. Ida Cedergren also testified that during the six months following that occasion

plaintiff in error had intercourse with her in his office a dozen or more times, and that on each occasion one of her girl playmates was with her when the act was committed. Four girls, whose ages at the time of the commission of the acts they testified about ranged from ten or eleven years to thirteen years, testified they had gone to the office of plaintiff in error with Ida and had seen him have intercourse with her. She was never accompanied by more than one girl at a time, but one or more of them testified they had accompanied Ida to the office of the plaintiff in error a number of times and at each time he had intercourse with Ida.

The indictment contained five counts, but the State elected to rely upon the offense Nora Porter and Ida testified was committed in the presence of Nora, which was the first alleged offense. Plaintiff in error objected to any proof that he committed the crime against nature upon Ida or that he had intercourse with Nora, and also to any proof of subsequent offenses with Ida. The court overruled the objections, permitted Ida and Nora to testify that plaintiff in error had intercourse with both of them, and other witnesses to testify to several subsequent offenses with Ida. The prosecution also called a physician, who testified he had examined Nora Porter in February, 1910; that the hymen was partially destroyed, and that in his opinion it was caused by external violence. We recently held in *People* v. *Gray*, 251 Ill. 431, that in a prosecution for rape of a female under the age of consent, more than one act of intercourse with her might be proven for the purpose of showing the relations and familiarity of the parties and as tending to corroborate the prosecutrix concerning the particular act relied on for a conviction.

Plaintiff in error objected to the testimony of Ida Cedergren and Nora Porter that he had intercourse with Nora Porter at the time of the commission of the offense upon Ida for which a conviction was sought. The objection was

overruled and the proof admitted. Subsequently plaintiff in error moved to strike out that testimony, but the motion was overruled. At the conclusion of the evidence plaintiff in error requested the court to instruct the jury not to consider the testimony of Nora Porter and Ida that he also had intercourse with Nora, but the instruction was refused. Counsel for the State endeavor to sustain these rulings of the court on the ground that the offense against Nora Porter was so connected with the offense charged in the indictment as to form part of the transaction, and therefore proof of the offense against Nora tended to establish the offense against Ida. We do not think this position sustainable upon reason or authority. The offense testified to as having been committed upon Nora Porter was no part of the offense for which the plaintiff in error was being tried. It was a separate and distinct offense, no part of the *res gestæ*, and proof of it was inadmissible upon any ground. The rule repeatedly announced in cases of this character is, that a separate and distinct offense cannot be proven in support of a prosecution for another offense. But there is an exception to the rule when the two acts are so connected as to be parts of one transaction. In that case proof of one tends to establish the other. (*Farris* v. *People,* 129 Ill. 521; *Parkinson* v. *People,* 135 id. 401; *Lyons* v. *People,* 137 id. 602; *Wistrand* v. *People,* 218 id. 323; *People* v. *White,* 251 id. 67; *People* v. *Molineux,* 62 L. R. A. 193.) Plaintiff in error was tried for rape upon Ida Cedergren. If, as is alleged, he a few minutes later committed a like offense against Nora Porter, it no more formed a part of the transaction with Ida, and was no more an explanation of that act, than if it had been committed in her presence on another occasion. Proof of it was no more necessary to an understanding of the question at issue than the testimony of the other girls that on subsequent days plaintiff in error had intercourse with them, and their testimony the court held was incompetent,

255 — 20

and either refused to admit it or ordered it stricken out after the witnesses had testified. The mere proximity of time within which two offenses may be committed does not necessarily make one a part of the other. Immediateness is not the true test. There must be a causal relation or logical and natural connection between the two acts or they must form parts of but one transaction. Tested by these rules, it seems very plain the court erred in admitting testimony of an offense against Nora. This testimony was of a highly prejudicial character. Plaintiff in error testified he was not guilty of either the offense against Ida Cedergren or Nora Porter. He introduced a number of witnesses who worked in and about the stone yard, and others, who testified they never at any time saw Ida or any of the other girls going in or out of the plaintiff in error's office; that Ida and the other girls who testified were in the habit of coming into the yard and annoying the men by soliciting pennies and otherwise; that the plaintiff in error had more than once driven them out of the yard and had at one time used a whip on some of them. Plaintiff in error also proved good general reputation for chastity by a considerable number of witnesses, and this proof was not disputed. Some of the evidence of Ida Cedergren, and some other testimony, was of such character that we refrain from referring to it in this opinion. It is sufficient to say that in the state of this record it cannot be said the admission of the testimony referred to was harmless.

Fully appreciating the gravity of the offense charged and the importance to the public morals and welfare of administering punishment in such cases where there is no reasonable doubt of the guilt of the accused, we have read the evidence with much care. The record does not make a case where a court of review can say the competent proof so conclusively shows guilt as to remove all doubt and justify the affirmance of the judgment notwithstanding the error in the admission of the proof referred to. (*People*

v. *Cleminson,* 250 Ill. 135.) We do not say that if only competent proof had been admitted and the verdict had been guilty it would not have been sustained, but as plaintiff in error testified he was not guilty, and offered other proof tending to show, in some degree, at least, the improbability of the stories told by the little girls, it is impossible for us to say that the verdict must have been the same if the incompetent testimony had not been admitted. This court, in *People* v. *Gray, supra,* adopted a more liberal rule in permitting proof of other offenses upon a female under the age of consent than the one for which the defendant is being tried than is applied in some other jurisdictions, but we cannot, without violating the right of a defendant to a fair trial, hold that proof may also be offered that he committed other offenses of the same character with other females. Nor can we say that where the evidence is conflicting the admission of such proof would not be sufficient to turn the scales against a defendant in an otherwise doubtful case.

Lena Levy was permitted, over plaintiff in error's objection, to testify that he had intercourse with her on one occasion when she went to his office with Ida after he had first committed the act with Ida, but at the conclusion of her testimony in chief that statement was stricken out. There is room for grave doubt whether the damaging effect of it could be removed from the minds of the jury.

On cross-examination of plaintiff in error the court, over his objection, permitted counsel for the State to inquire of him if he had not, shortly before his arrest, met a little girl on Thirty-third street and handed her some pictures. The witness answered he had not, and counsel for the State exhibited to the witness some pictures and asked him if he remembered them. The witness answered he did not, and counsel, ostensibly for further refreshing the memory of the witness, asked him if he remembered meeting a little girl in the presence of a boy. The com-

petency of these questions was not made to appear by any statement of counsel then, nor by anything testified to afterwards. They should not have been allowed.

Other alleged errors in the admission of testimony need not be particularly mentioned. What we have above said will be a sufficient guide on the next trial of the case.

Complaint is made of the rulings of the court in refusing several instructions asked by plaintiff in error. Except as to the instruction advising the jury not to consider the testimony of the offense against Nora Porter we find no substantial error in the refusal of instructions.

For the errors indicated the judgment will be reversed and the cause remanded.          *Reversed and remanded.*

Mr. JUSTICE CARTER, dissenting:

I cannot agree with the conclusion reached in the foregoing opinion that the evidence of attempted sexual intercourse with Nora Porter was not properly admitted by the trial court. In my judgment the evidence as to the crime against nature and the attempted intercourse with Nora Porter was properly admitted by the court as a part of the *res gestæ* of the act of intercourse with Ida Cedergren, upon which the State elected to prosecute and upon which conviction was had.

No precise rule can be laid down governing the admissibility of evidence under the doctrine of *res gestæ.* (24 Am. & Eng. Ency. of Law,—2d ed.—662; 3 Wigmore on Evidence, sec. 1795.) "All the surrounding facts of a transaction, or, as they are usually termed, the *res gestæ,* may be submitted to a jury, provided they can be established by competent means sanctioned by the law and afford any fair presumption or inference as to the question in dispute. * * * No competent means of ascertaining the truth can or ought to be neglected by which an individual would be governed and on which he would act with a view

to his own concerns in ordinary life." (Starkie on Evidence,—10th Am. ed.—79.)

The "surrounding circumstances, constituting parts of the *res gestæ,* may always be shown to the jury along with the principal fact, and their admissibility is determined by the judge according to the degree of their relation to that fact and in the exercise of his sound discretion, it being extremely difficult, if not impossible, to bring this class of cases within the limits of a more particular description." (1 Greenleaf on Evidence,—Lewis' ed.—sec. 108.)

"The *res gestæ* may be defined as those circumstances which are the undesigned incidents of a particular litigated act and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of anyone concerned, whether participant or bystander. They may comprise things left undone as well as things done. Their sole distinguishing feature is that they should be the necessary incidents of the litigated act;—necessary in this sense, that they are part of the immediate preparations for or emanations of such act and are not produced by the calculated policy of the actors. In other words, they must stand in immediate causal relation to the act,—a relation not broken by the interposition of voluntary individual wariness, seeking to manufacture evidence for itself. Incidents that are thus immediately and unconsciously associated with an act, whether such incidents are doings or declarations, become in this way evidence of the character of the act." (1 Wharton on Evidence,—2d ed.—sec. 259.)

The decisions as to the admission of evidence of a distinct substantive crime are numerous. In many of them it is stated that such evidence is admitted because the acts are a part of the same transaction as the crime for which the accused is being prosecuted. While reference is not always made in these decisions to the doctrine of *res gestæ,* it is

clear that the reasoning in support of the admission of another crime because it is a part of the same transaction is the same as that invoked when other crimes are admitted as a part of the *res gestæ* or surrounding circumstances of the crime for which the accused is on trial. Such evidence of a collateral crime is admitted in these cases because it is relevant to the issue and tends to make it more or less probable, as these other offenses or acts are immediately and closely associated with the act for which the defendant is being tried.

In *Hammond* v. *State,* 41 So. Rep. (Ala.) 761, being a prosecution for murder, evidence that immediately after shooting the deceased the defendant shot the brother of the deceased was held admissible. See, also, *State* v. *Vaughan,* 98 S. W. Rep. (Mo.) 2; *Commonwealth* v. *Sturtivant,* 117 Mass. 122.

In *Davis* v. *State,* 23 S. W. Rep. (Tex.) 684, the defendant was convicted of robbery, and, in a separate trial, of rape. Proof was admitted on both trials showing that he raped the prosecuting witness and afterwards robbed her.

In *Rex* v. *Folkes,* 1 Moody's Eng. Crown Cas. 354, an indictment against two prisoners, charging each, in different counts, as principal in the first degree and as an aider and abetter of other men in rape, evidence was held admissible of the several assaults on the same woman, on the same occasion, by the prisoner and other men, each assisting the other, in turn, in committing rapes upon the body of the prosecutrix. The doctrine of this case is quoted with approval, and other cases to the same effect cited, in 3 Russell on Crimes, (6th ed.) 407.

In *State* v. *Dooley,* 89 Iowa, 584, the defendant was indicted and tried for the murder of a young girl, Nellie Coons. The State was permitted to prove that in the same room where the dead body of Nellie Coons was found there was also found the dead body of her mother, and evidence was admitted showing the condition of the body and cloth-

ing. It was held proper to show the condition in which the child's body was found and its surroundings, and incidentally that of the mother, in order that the connection of the defendant with the crime, and the circumstances and motives which prompted it, might be more fully understood, and the fact that in proving these matters another crime would necessarily be shown did not affect the right of the State to introduce the evidence in question. This evidence tended to show that an assault with an intent to commit rape had been made upon the mother before she was killed.

In *Proper* v. *State*, 85 Wis. 615, evidence was admitted that the accused got into the bed in which the prosecutrix and an older girl were sleeping and had intercourse with the latter, as showing an indecent assault upon both and as corroborative of the testimony of the prosecutrix in respect to previous and subsequent assaults.

In *Harmon* v. *Territory*, 15 Okla. 147, the defendant was on trial for rape of one Annie Patt. The evidence showed that the prosecuting witness, with her sister, Lucy, visited, with her uncle, a certain saloon; that the men there threw the uncle out of the room and then committed a rape upon the prosecuting witness. Testimony was admitted, over the objection of the defendant, that he committed a rape on the same occasion, in another room, upon the sister, Lucy. This evidence was held admissible, under the circumstances, to show why Lucy did not come to the assistance of her sister.

In *Thompson* v. *State*, 11 Tex. Crim. App. 51, in a trial for rape, the prosecuting witness was allowed, over objection, to narrate the circumstances of an assault made by the accused upon her father-in-law when the latter came to her rescue during her struggle with the accused, and she was also allowed to state that her father-in-law was dead at the time of the trial.

In *State* v. *LaPage,* 57 N. H. 245, testimony was admitted which tended to show that the prisoner, about the time of the murder, was frequenting the neighborhood with the view of committing rape upon some one of the several young females who he knew would be likely to pass over the road where the murder was afterwards committed, as was also evidence of obscene and filthy language he had used with reference to these same young ladies, tending to show what thoughts were in his mind, the court holding that there was such connection of time, place and circumstances as to give this evidence a logical connection with the fact in issue. The court in that case, however, held that the testimony of a woman that the defendant had four years before committed the crime of rape upon her was improperly admitted.

This court has had occasion to discuss this question in a number of cases and the rule laid down here is in substantial accord with the authorities heretofore cited. The only difficulty is to decide whether in a given case the evidence showing a separate or distinct crime is fairly included within the *res gestæ* of the crime on trial,—that the two acts form one transaction. In *Hickam* v. *People,* 137 Ill. 75, (a murder case,) it was held no error to admit proof of the killing of a person other than the one named in the indictment and an assault upon another in the same difficulty, where the evidence was inseparable from the killing of the person named in the indictment and related to one and the same transaction.

In *Lyons* v. *People,* 137 Ill. 602, under an indictment for murder, it was stated that it was the general rule that proof of a distinct and substantive offense could not be admitted in support of another offense, but that that rule did not apply if the evidence tended in some way to prove the accused guilty of the crime for which he was on trial or when the two acts formed but one transaction.

In *People* v. *White,* 251 Ill. 67, this court said (p. 70) : "The evidence in any case should be confined to the issue being tried, but where there is a logical and natural connection between two acts, or where they form but one transaction, proof of both is proper." It was there held, on an indictment for murder, that previous acts of the defendant, committed before the deceased was present, were properly admitted in evidence.

In *Parkinson* v. *People,* 135 Ill. 401, the court held that it was not permissible to prove a similar but distinct offense, occurring on another day, from that for which the accused was being tried, but the court stated (p. 405) : "Where a party is indicted for one offense and a complete, detailed narrative of that offense by the witnesses involves a recital of another offense, it is not error to permit them to complete the detailed narrative of the offense for which the party is indicted, notwithstanding the recital of an offense for which he was not indicted." The evidence in question was to the effect that the complaining witness went with another woman to the laundry of the defendant, when and where he made assaults and committed offenses upon both of them.

In *People* v. *Abrams,* 249 Ill. 619, this court sustained a conviction when evidence had been admitted showing the defendant had at the same time and place committed the crime against nature upon two different girls.

The evidence for the State shows that on the day of the offense of which the accused was convicted the complaining witness and Nora Porter were invited by him to the office of the stone yard, taken by him into a room, the door fastened and the alleged offense committed, immediately followed by the other acts, and each of the two little girls given a small sum of money; that all of these occurrences took place in the same room within less than fifteen minutes of time. These acts were so closely and directly associated with each other that they formed, in reality, a

part of one transaction, the detailed narrative of which would necessarily include all that took place in the room. Under any definition of *res gestæ* it seems to me they were plainly a part of the circumstances surrounding and giving character to the ultimate fact in the case. These acts were so connected by time, place and circumstance with the central fact, that on reason and authority I can reach no other conclusion than that they were properly admissible as necessary incidents, clearly aiding in ascertaining the truth of the issue being tried.

Mr. JUSTICE HAND: I concur in the dissenting opinion of Mr. Justice Carter in so far as it holds that it was proper to prove all that took place in the room between the defendant and the prosecutrix and Nora Porter on the occasion relied upon by the People for a conviction.